UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:13-cr-513-1 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| DIERE DEJOURNETT, | ) | |
| | ) | |
| DEFENDANT. | ) | |

On November 20, 2014, defendant Diere DeJournett ("DeJournett") was sentenced to a custody term of 240 months, following his guilty pleas to conspiracy to distribute and possess with intent to distribute cocaine, in violation 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), 846, 851; and money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) & (2). (Doc. No. 239 (Judgment); *see* Minutes of Proceedings [non-document], 11/20/2014; Doc. No. 169 (Plea Agreement); *see also* Doc. No. 18 (Superseding Indictment).)

DeJournett now seeks a compassionate release under 18 U.S.C. § 3582(c)(1)(A). (Doc. Nos. 384 and 385 (Motions for Compassionate Release);[1] *see* Doc. No. 386 (Supplement in Support of Compassionate Release).) DeJournett requests relief to reduce his criminal history category under Amendment 821 to the United States Sentencing Guidelines. (Doc. No. 387.) Appointed counsel elected not to file a supplement to DeJournett's motion under Amendment 821,

---

[1] Doc. Nos. 384 and 385 appear to be identical, and both motions seek only a compassionate release under § 3582(c)(1)(A). Through a filing error, the motion was filed as both a motion for compassionate release (*see* Doc. No. 84) and as a motion to reduce sentence under Amendment 821 (*see* Doc. No 385).

although counsel underscored the limited request that DeJournett was making for a reduction to his criminal history category (*see* Doc. No. 389 (Notice)). Appointed counsel did file two supplements in support of DeJournett's request for compassionate release. (*See* Doc. No. 392 (Supplement); Doc. No. 395 (Second Supplement in Support of Compassionate Release).) Plaintiff United States of America (the "government") opposes the motions. (Doc. No. 391 (Response to Motion for Compassionate Release); Doc. No. 396 (Response to Motion to Reduce Sentence under Amendment 821).) For the reasons that follow, both motions are DENIED.

## I.   LAW AND DISCUSSION

The sentencing court has no inherent authority to reconsider and/or modify an otherwise valid sentence. *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). Instead, the authority of the Court to resentence a defendant is limited by statute. *United States v. Houston*, 529 F.3d 743, 748–49 (6th Cir. 2008) (citing *United States v. Ross*, 245 F.3d 577, 585 (6th Cir. 2001)); *see United States v. Alexander*, 951 F.3d 706, 707 (6th Cir. 2019) ("Generally speaking, once a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute.") Under 18 U.S.C. § 3582(c), a court may only modify a term of imprisonment under the following circumstances: (1) upon a motion of the Director of the Bureau of Prisons ("BOP") or defendant for compassionate release; (2) as expressly permitted by statute or by Fed. R. Crim. P. 35; or (3) where a defendant has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission. § 3582(c)(1)–(2).

DeJournett does not seek relief under Rule 35. Instead, while recognizing that he is not entitled to a sentence reduction under Amendment 821, Part A (because his guideline sentence is

based upon a statutory mandatory minimum sentence), he requests that his criminal history score and category be updated pursuant to Amendment 821 and its treatment of status points. He also claims that he is entitled to a compassionate release. On July 19, 2022, the Court denied DeJournett's first request for a compassionate release. (Order [non-document], 7/19/2022.) In support of early release, DeJournett cited his medical problems associated with his dental health and subsequent changes in sentencing law that would have resulted in a lower applicable mandatory minimum term. The Court found that DeJournett failed to demonstrate the existence of extraordinary and compelling reasons justifying release, and that, in any event, the sentencing factors set forth in 18 U.S.C. § 3553(a) did not support a reduction in sentence or a release. (*Id.*) He maintains that recent changes to the Sentencing Commission's policy statement applicable to compassionate release—U.S.S.G. § 1B1.13—now entitle him to relief. The Court will address each contention.

### A. Part A of Amendment 821

The Court begins with DeJournett's motion for a reduced sentence under Amendment 821 to the sentencing guidelines. The Court employs a two-step approach to deciding whether to reduce a sentence based on a retroactive amendment to the federal sentencing guidelines. First, the Court must consider the scope of the reduction authorized by the amendment, and then it must consider whether such a reduction is warranted based on the factors set forth in 18 U.S.C. § 3353(a). *Dillon v. United States*, 560 U.S. 817, 826, 130 S. Ct. 2683, 177 L. Ed. 2d 271 (2010) (citing § 3582(c)(2)).

Noting that he committed the instant offenses while he was on probation, DeJournett argues that he is eligible for relief under Amendment 821, Part A, which affected the sentencing

guidelines' treatment of offenses committed while under a criminal justice sentence. (*See* Doc. No. 387, at 1.) Part A of Amendment 821, which now appears in the guidelines at § 4A1.1(e), limits the criminal history impact of "status points," decreasing them by 1 point for individuals with 7 or more criminal history points and eliminating status points for those with 6 or fewer criminal history points. *See* U.S.S.G. § 4A1.1(e). The Amendment was given retroactive effect, provided that any order reducing a term of imprisonment based on retroactive application of Amendment 821 have an effective date of February 1, 2024, or later. *See* § 1B1.10(e)(2) (Nov. 1, 2023).

At the time of sentencing, the Court calculated DeJournett's base offense level to be 32. (*See also* Doc. No. 238 (Revised Final PSR), at 6 ¶ 19.) After applying a 2-level enhancement under § 2S1.1, a 2-level enhancement under § 3B1.1(b), and a 3-level reduction for acceptance of responsibility, DeJournett's adjusted total offense level was 33. (*See also id*. at 6–7 ¶¶ 20, 22, 26–28.) Additionally, the statutory penalty for Count 1—a violation of 21 U.S.C. §§ 841(b)(1)(A) and 846—was enhanced pursuant to 21 U.S.C. § 851, resulting in a mandatory minimum of 20 years of imprisonment. (*See also id*. at 15 ¶ 72.)

DeJournett had prior convictions for possession of cocaine, domestic violence, possession with intent to distribute cocaine and crack cocaine, and operating a vehicle while under the influence of alcohol or drugs, which collectively scored 6 criminal history points. (*See also id.* at 9–11 ¶¶ 38–40, 43.) Two more points were added because DeJournett was under a criminal justice sentence at the time of the instant offenses. (*See also id*. at 11 ¶ 44.) With a total of 8 criminal history points, the guidelines dictated that he was a criminal history category IV. (*See also id*. at 11 ¶ 45.) The advisory guideline range at offense level 33, criminal history category IV was 188 to 235 months. (*See also id*. at 15 ¶ 73.) However, pursuant to U.S.S.G. § 5G1.2(b), because the

4

statutorily authorized minimum sentence was greater than the maximum of the applicable guidelines range, the guidelines term of imprisonment was 240 months. (*See also id.* at 15 ¶ 72.) DeJournett was sentenced to the statutory mandatory minimum term. (*See* Doc. No. 239.)

Under the Amendment, because DeJournett had 6 or fewer criminal history points, his "status points" would be eliminated, resulting in a total criminal history score of 6, which correlates to a criminal history category III and a resulting guideline range of 168 to 210 months. But because DeJournett's statutory mandatory minimum sentence of 20 years would still apply, his guidelines term of imprisonment remains 240 months. (*See* U.S.S.G. § 5G1.1(b) ("Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence.").)

Since the statutory mandatory minimum 240-month sentence "remains the same as it was at the time of [DeJournett's] original sentencing," the government argues, DeJournett "is not eligible for a sentence reduction under Amendment 821." (Doc. No. 396, at 4.) The Court agrees. Title 18, United States Code, Section 3582(c)(2) provides that the Court may grant relief to a defendant if he was sentenced to a term of imprisonment based upon a sentencing range that has subsequently been lowered by the Sentencing Commission. Because DeJournett's applicable sentencing range was not lowered by the Amendment, he is entitled to no relief under it. *See, e.g., United States v. Luna*, No. 3:16-cr-5-4, 2024 WL 989015, at *1 (N.D. Ohio Mar. 7, 2024) (defendant was not entitled to sentence reduction under Amendment 821 because he was subject to a statutory mandatory sentence that exceeded his amended advisory guideline range).

DeJournett acknowledges that he is ineligible for a sentence reduction because he is still subject to a mandatory minimum sentence and that this statutorily mandated sentence "trumps"

5

any range that would otherwise be dictated by a reduction in his status points and criminal history category. (Doc. No. 387, at 2.) Nevertheless, he asks that the Court recognize that his criminal history category would now be a III under the Amendment. (*Id.*) According to DeJournett, an updated order from this Court regarding his criminal history is necessary to correct the Bureau of Prison's ("BOP") determinations regarding his security level and recidivism score, which, in turn, dictates his ability to qualify for certain programs and benefits. (*See id*. ("Mr. DeJournett is only asking for his guidelines to be adjusted as if he were sentenced today . . . [so that he may] be placed in his proper category.").)

The Court is without authority to afford DeJournett the relief he seeks. Because DeJournett is ineligible for a sentence reduction under Amendment 821, Part A, the Court may not utilize the Amendment to revisit his sentence. Further, to the extent that DeJournett is asking the Court to review the BOP's determination regarding his security level and eligibility for various programs and incentives tied to an inmate's risk assessment, the "BOP and *not* the sentencing court is responsible for classification determinations and placement decisions[.]" *See, e.g., United States v. Williams*, No. 2:15-cr-69, 2024 WL 911591, at *3 (D. Maine Mar. 4, 2024) (rejecting similar argument that Amendment 821 empowered the district court to reduce defendant's criminal history score (citing, among authority, *Tapia v. United States*, 564 U.S. 319, 331, 131 S. Ct. 2382, 180 L. Ed. 2d 357 (2011)). To the extent DeJournett believes that the BOP has incorrectly administered his sentence, including his risk classification and any consequences resulting from the classification, his remedy lies in a civil rights action under 28 U.S.C. § 1331. *See Benningfield v. Snyder-Norris*, No. 15-cv-115, 2016 WL 1271027, at *2 (E.D. Ky. Mar. 29, 2016) (collecting cases).

Because DeJournett's statutory mandatory minimum guideline sentence remains unchanged under Amendment 821, he is not eligible for relief and his motion pursuant to Amendment 821 is denied.

### B. Compassionate Release

DeJournett also seeks, for a second time, a compassionate release under 18 U.S.C. § 3582(c)(1)(A). Under this statutory provision, a district court may grant a sentence reduction "only if it finds that the defendant satisfies three requirements: (1) 'extraordinary and compelling reasons warrant such a reduction'; (2) the 'reduction is consistent with applicable policy statements issued by the Sentencing Commission'; and (3) the relevant § 3553(a) factors support the reduction." *United States v. Hunter*, 12 F.4th 555, 561 (6th Cir. 2021) (quoting § 3582(c)(1)(A)(i); *United States v Elias*, 984 F.3d 516, 518 (6th Cir. 2021)); *see United States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020). Additionally, exhaustion of administrative remedies is a mandatory claims-processing rule that must be satisfied before a defendant may seek compassionate release. *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020) (citations omitted).

The policy statement applicable to compassionate release motions, 18 U.S.C. § 1B1.13, was recently amended (effective November 1, 2023) and describes six categories of extraordinary and compelling reasons that individually, or in combination, may support a request for compassionate release. These categories are: (1) medical circumstances of the defendant; (2) the age of the defendant; (3) a defendant's family circumstances; (4) sexual or physical abuse suffered by the defendant while in custody involving a "sexual act" or "serious bodily injury"; (5) "other reasons" similar in gravity as those articulated in (1)–(4); and (6) an "unusually long sentence." 18 U.S.C. § 1B1.13(b).

7

The parties agree that DeJournett has exhausted his administrative remedies. (Doc. No. 384, at 1–2; Doc. No. 391, at 2.) The Court, therefore, turns to a consideration of whether defendant has demonstrated the existence of extraordinary and compelling reasons identified in § 3582(c)(1)(A)(i), and discussed in detail in § 1B1.13(b), as amended. Citing to the first category—medical circumstances of the defendant—DeJournett maintains (once again) that he is "experiencing a rapid deterioration of his oral health[.]" (Doc. No. 384, at 2.) Defendant and his counsel have supplied the Court with medical records documenting issues related to DeJournett's dental health and treatment. (Doc. No. 384-2; Doc. No. 395-1.) The government has also provided medical records relating to the dental care DeJournett has received in BOP custody. (*See* Doc. No. 391-1.)

DeJournett maintains that his poor dental health qualifies under § 1B1.13 as an extraordinary and compelling reason for a compassionate release because it "requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." § 1B1.13(b)(1)(C). He notes that the medical records demonstrate that he has suffered from dental disease for years, resulting in "tooth decay and recurrent infections." (Doc. No. 392-1, at 4 (citing medical records).) Yet, while he has five teeth that have been marked for extraction, he complains that the BOP has not scheduled oral surgery for him.[2]

There is no dispute that DeJournett's dental health issues are serious. (*See* Doc. No. 391,

---

[2] During the week of January 15, 2024, DeJournett was transported to an oral surgeon but was subsequently returned to his facility without any procedures being performed. (Doc. No. 395, at 1 (citing Doc. No. 395-1, at 20).) The records indicate that the surgeon did not have time to perform the necessary procedures that day and that the surgery would be rescheduled. (*Id*.) DeJournett claims that he was actually told by the surgeon that the surgeon had not received the necessary authorization from the BOP to schedule the surgery (*see* Doc. No. 395, at 1), but the records do not support this.

8

at 4), Yet, the dental records supplied by the parties demonstrate that the BOP is providing treatment for his many serious dental conditions. The records show that DeJournett has been seen regularly in the medical unit at his facility, and that the staff have addressed his short-term symptoms—such as infections and pain—and devised a long-term care plan that includes surgery. Toward that end, DeJournett has consulted with an oral surgeon and there is no reason to believe that a surgery, if appropriate, will take place in the near future. Records also show, as the Court previously determined, that some of the delays associated with DeJournett's dental care were caused by DeJournett, himself, when he initially refused recommended treatment that included extractions. (Doc. No. 391, at 4 (citing Doc. No. 391-1); *see* Doc. No. 392-1, at 4; *see also* Doc. No. 376; Order [non-document], 7/19/2022.) While it is understandable that DeJournett now is frustrated with what he perceives as a delay in scheduling his dental surgery, he has failed to carry his burden of demonstrating that he is not being provided with the specialized medical care that he requires.

DeJournett also claims that he has been subjected to an "unusually long" sentence as a basis for relief. Relevant to the compassionate release motion, subsection (6) of § 1B1.13, provides:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

§ 1B1.13(b)(6). DeJournett argues that if he were sentenced today, he would not be subject to a 20-year mandatory minimum because the First Step Act of 2018 reduced the penalty to 15 years.

9

(Doc. No. 392-1, at 7 (citing 21 U.S.C. § 841(b)(1)(A) (2018).) Because he has served more than 10 years of his original sentence, DeJournett argues the gross disparity between the sentence he received (240 months) and the sentence he believes he would have received (188 months) had the First Step Act been available at the time of his sentencing establishes an extraordinary and compelling reason to support release.[3] (*Id.*)

There is currently a debate among jurists as to whether the Sentencing Commission exceeded its authority by adopting § 1B1.13(b)(6). *See United States v. Hicks*, No. 1:08-cr-45, 2024 WL 866715, at *2–3 (S.D. Ind. Feb. 29, 2024) (discussing a line of cases that "can be read to hold that the statutory definition of 'extraordinary' does not extend to law changes, which means there is a question about whether the Sentencing Commission exceeded its authority when it added this item to the list of potentially extraordinary and compelling reasons warranting a sentence reduction under § 3582(c)(1)(A)(i)" (collecting cases including *United States v. Thacker*, 4 F.4th 569, 574 (7th Cir. 2021))); *United States v. Mann*, No. 6:04-cr-31, 2024 WL 666324, at *5 (E.D. Ky. Feb. 16, 2024) (noting "tension" of reconciling § 1B1.13(b)(6) with existing sentencing case law); *see also United States v. McCall*, 56 F.4th 1048, 1066 (6th Cir. 2022) (holding that "[n]onretroactive legal developments do not factor into the extraordinary and compelling analysis"). But the Court need not wade into this debate because, as explained below, even if DeJournett qualifies for consideration under § 1B1.13(b)(6), a reduction of the prison term would

---

[3] He also relies on Amendment 821 to argue that he is currently serving an unusually long sentence, suggesting that his guidelines sentence would be lowered today with the Amendment. (Doc. No. 392-1, at 7.) As discussed *supra*, DeJournett's advisory guideline sentence was unaffected by the passage of Amendment 821.

10

not be appropriate in light of the sentencing factors in 18 U.S.C. § 3553(a).[4] *See United States v. Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021) (citing § 3553(a) and directing district courts to consider all relevant statutory factors).

When the Court revisited the § 3553(a) sentencing factors in connection with DeJournett's first compassionate release motion in 2022, it found, in part:

> Defendant, who is 45 years old, is currently serving a sentence for his leadership role in a drug conspiracy that was responsible for trafficking substantial quantities of cocaine and laundering substantial amounts of currency. Drug trafficking is an inherently dangerous activity. Additionally, defendant, whose base level offense at sentencing was a 33, has a criminal history that began when he was 19 years old and included multiple drug and weapons offenses, in addition to convictions for domestic violence and obstruction. Prior prison sentences, including a lengthy federal sentence for trafficking, have failed to cause defendant to curb his criminal behavior. The Court has also considered defendant's release plan, including available potential employment. But, after considering all of the factors, the Court finds that a reduction in sentence would undermine the need for the sentence imposed to reflect the seriousness of the offenses, protect the public, promote respect for the law, provide deterrence, and ensure just punishment. Based upon these same facts, the Court also finds that defendant poses a serious danger to the community. Further to the extent that defendant requests to be released and to serve a period of supervised release on home confinement, for the reasons already stated, defendant is not an appropriate candidate for release under § 3582, even with conditions.

(Order [non-document], 7/19/2022.)

Beyond the passage of approximately two years, little has changed to alter the Court's analysis. The nature and circumstances of the charged offenses (for which defendant had a

---

[4] DeJournett also identifies a laundry list of additional reasons that he believes, separately or in combination, support a finding of extraordinary and compelling reasons under the "catchall" provision in § 1B1.13(b)(5). (*See* Doc. No. 392-1, at 7–8.) Specifically, he cites the limited availability of mental health services at his facility and the "lingering effects" of the COVID-19 pandemic, including staffing shortages. (Doc. No. 384, at 3–4.) He does not document any mental health condition from which he currently suffers and is not being addressed, and the Court does not believe that the remaining cited complaints, either separately or in combination with his dental health, rise to the level of extraordinary and compelling reasons to justify early release. In any event, as explained below, if DeJournett could meet the first hurdle of the analysis, his request for compassionate release would still be denied because the sentencing factors do not favor release.

11

leadership role) remain serious, and the trafficking of substantial amounts of narcotics was certainly dangerous. *See United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010) ("To be sure, drug trafficking is a serious offense, that, in itself, poses a danger to the community." (citations omitted)). Defendant's extensive criminal history—that spans nearly 28 years and includes numerous weapons and drug trafficking convictions—also remains troubling to the Court.

Nevertheless, DeJournett insists that he "has made genuine efforts to show his rehabilitation." (Doc. No. 392-1, at 9s.) He offers institutional records detailing the programming that he has completed in prison. (*See* Doc. No. 384-4.) He also highlights the fact that, during his incarceration, he started a publishing company to encourage incarcerated individuals to pursue careers in literature. Through his publishing company, he published a fictional novel that explores the consequences of domestic violence. (Doc. No. 384, at 7.) Additionally, he notes that he has enrolled in a program to obtain his real estate appraisers license and has held numerous positions in his institution. (*Id.*; *see* Doc. No. 384-9.) And while he has been incarcerated for a decade, he continues to receive support from his family and community. (Doc. No. 392-1, at 9 (citing Doc. No. 384–13).)

The Court has considered these post-judgment activities and circumstances, but it must also consider the fact that DeJournett has had multiple disciplinary infractions while incarcerated. (*See* Doc. No. 391-2 (Inmate Discipline Data).) One such infraction—possession of a cellular phone—could have been charged as a new criminal offense under 18 U.S.C. § 1791(a)(2) & (b)(4). (*See id*. at 1.) These infractions suggest that defendant remains unable or unwilling to conform his behavior and would be unlikely to abide by any terms of early release.

After considering all of the factors, the Court renews its determination that a reduction in

sentence would undermine the need for the sentence imposed to reflect the seriousness of the offenses, promote respect for the law, provide just punishment for the offenses, afford adequate deterrence, and protect the public from further crimes of the defendant. Based on these same facts, the Court also finds (once again) that defendant poses a danger to the community. His motion for a compassionate release, therefore, is denied.

## II. CONCLUSION

For the foregoing reasons, defendant's motions, as supplemented, for a compassionate release (Doc. Nos. 384, 385) and for relief under Amendment 821, Part A (Doc. No. 387) are DENIED.

**IT IS SO ORDERED**.

Dated: April 11, 2024

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**